## MARY STIPPEL v. CHARLES FRIEND & SON.[1]

January 23, 1925.

No. 24,269.

**Death of employe caused by fall in course of his employment.**

1. Evidence considered and *held* sufficient to warrant a finding that the employe's death was caused by shock, occasioned by a fall causing the bruises found on his head, arising out of and in the course of his employment.

[1]Reported in 201 N. W. 934.

**Respondent entitled to reasonable attorney's fee.**

2. Respondent entitled to recover a reasonable amount for attorney's fees in the supreme court, as provided by chapter 423, § 6, p. 654, L. 1921.

Upon the relation of Charles Friend & Son, employer, and the Employers Mutual Liability Insurance Company, insurer, the supreme court granted its writ of certiorari directed to the Industrial Commission to review its order awarding compensation in a proceeding under the Workmen's Compensation Act by the widow of John Stippel, employe, against relators, employer and insurer. Affirmed.

*Hubert Harvey*, for relators.

*Herbert P. Keller* and *George G. Chapin*, for respondent.

QUINN, J.

Certiorari to review an order of the Industrial Commission affirming an award of compensation in favor of respondent, the widow and only dependent of John Stippel, deceased, an employe of Charles Friend & Son.

The employer, Charles Friend & Son, operated a collar factory at the corner of Third and Cedar streets in the city of St. Paul. They maintained a salesroom and office on Jackson street, between Fourth and Fifth streets, about four blocks distant from their factory. John Stippel had been in their employ for a number of years, and at the time in question was foreman of the factory.

There was a fire in the factory building on the evening of September 15. On the following morning, Stippel appeared at the factory about 7:45, as usual, but was unable to go to work on account of the fire. He lived at 485 Hopkins street, about three blocks from the Payne avenue carline. His son-in-law and daughter had a store at 445 Collins street on a carline. Another daughter lived at 559 De Soto street about three blocks distant.

When Stippel arrived at the factory on the morning after the fire, being unable to go to work, he and two other employes went across the street and each drank three glasses of alcohol wine, com-

monly called Dago Red. Stippel then started home on a street car, went to the store of his daughter, arriving there about 9 o'clock, remained about half an hour and then went to the home of the other daughter, shaved with a straight edge razor, remained about half an hour, was sober, and told his daughter about the fire. He then went home, remained until about 11 o'clock, told his wife about the fire and talked with the laundryman. He then returned to the store, talked with his son-in-law, and started down town a little before 12 o'clock.

The time required in going from the store to the office on Jackson street was about 25 minutes. At the office he met Mr. Friend and a fellow employe, obtained $5 from Friend which he had in his pocket when found after his death. Friend requested him to go to the factory and assist in assorting the damaged leather, saying that he was going to lunch and would not be at the factory until 1:30. Stippel and his coemploye then walked to the factory, arriving there something like ten minutes before one o'clock when they parted, his companion going upstairs. Shortly thereafter Stippel was inquired for and, upon search, at about 1:30 was found in the basement, at the foot of the stairs, lying on his face. Life was extinct.

The stair leading down into the basement was dark. There had been an electric light switch at the head of the stair for the purpose of turning on the electric light when going down these stairs. The fire had destroyed the electric system and the railing on the right hand side of the stair had been torn down during the fire. On going down the stairs, a man of the height of the deceased would have to stoop a trifle in passing under a beam extending across over the stairway.

When the deceased was found, the coroner was informed and an inquest held that afternoon at about 5 o'clock by the coroner and his assistants and attended by a physician in the employ of the appellant insurance company, without notice to the wife or any member of the family of deceased.

The commission found that John Stippel, the deceased, was in the employ of Charles Friend & Son at a wage of $42 per week and

that, while so employed, he met with an accident which resulted in his immediate death and that such accident arose out of and in the course of his employment.

The appellants claim that the cause of decedent's death was acute alcoholism and that there is no proof in the record sufficient to warrant a finding that his death was the result of an accident, while it is contended on behalf of the respondent that the cause of decedent's death was shock, caused by his accidentally falling down the stairs leading from the ground floor to the basement. A careful reading and consideration of the testimony, as it appears in the record, satisfies us that the proof was sufficient to warrant a finding upon either contention as to what caused decedent's death. Mitton v. Cargill Elev. Co. 129 Minn. 449, 152 N. W. 753.

Dr. Schoch, a deputy coroner, and Dr. Heron, another deputy coroner, were called as witnesses by the appellants. They testified that they were called and conducted a post mortem examination of the body of the deceased on October 15; that, in their opinion, the cause of death was acute alcohol poisoning; that Dr. Geist was present on behalf of the appellant insurance company; that there were bruises on the head of deceased; that they did not make any inquiry as to the man's activities just prior to his death. The doctors explained the condition of the stomach, head and other parts of the body as they say they found them.

John W. Kessler was called by the respondent and testified that he was an undertaker; that he received the body of the deceased during the night following his death; that he took care of the body; that there was a bruise on the right side of the head, in the temporal region, a little larger than a half dollar; that there was another bruise a little back from the center of the head, on the left side, about the same size as the other; that they were discolored, black and blue, showed out plainly; that there were numerous scratches around the nose and lips.

Dr. Rutherford was called by the respondent. He testified that he was on the hospital staff of the City Hospital; that at one time he was on the University staff; that he had handled a great many cases of intoxicated persons; that he had read the findings of the

post mortem of John Stippel; that he heard the testimony of Dr. Geist; in answer to a hypothetical question said that it was his opinion that the man did not die of alcoholism; that in his opinion the man died of shock, probably due to a fall, sustained at the time, by the bruises on the head.

From a reading of the testimony found in the record, we have no hesitancy in holding that there was ample proof to warrant the findings of the Industrial Commission, and we find no error in the denial by the referee in refusing to reopen the case for the reception of further testimony, which was a matter resting in the discretion of the commission, nor do we discover any error in the refusal of a new trial, asked for upon the grounds of newly discovered evidence.

The compensation act provides for the usual costs and disbursements on review in the supreme court, and further, if an award in favor of the employe or his dependents is affirmed, or modified and affirmed, or, if a disallowance is reversed, "the court may allow reasonable attorney's fees incident to such review, which shall be included as a part of the judgment order of the Supreme Court." L. 1921, p. 654, c. 423, § 6. Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261. Such allowance is for services in this court on the review, not for services before the commission. They are not a gratuity to counsel. They are intended wholly, or in part, to relieve the employe or his dependents of the financial burden of successfully resisting or prosecuting a review of the award of the commission. The plaintiff is awarded attorney's fees in the sum of $200.

Affirmed.